UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN R. ZIMMER,<br><br>            Petitioner,<br><br>    vs.<br><br>ROBERT J. HERNANDEZ, WARDEN,<br><br>            Respondent. | Civil No. 08cv2277 BTM (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 1] |

## I.  INTRODUCTION

Steven Richard Zimmer is a California prisoner serving a 26 years to life term for first-degree murder committed in 1984.  Zimmer has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging the Board of Parole Hearings' ("Board") June 21, 2007 parole denial.  Zimmer's Petition puts forth three grounds for habeas relief regarding alleged violations of his due process rights.  Zimmer alleges that the Board's decision to deny him parole violates his Fourteenth Amendment due process rights because (1) the Board relied on irrelevant and unreliable pre and post-conviction evidence, as well as the circumstances of his commitment offense, to determine that he poses a current danger to society and is thus unsuitable for parole; (2) the Board failed to set a release date; and (3) the Board's parole denial decision relied, in part, on Zimmer's failure to fully avail himself of rehabilitative programming.

1      Respondent asserts that Zimmer has neither shown that the state courts unreasonably
2 applied clearly established federal law, nor shown that the state court decisions were based on an
3 unreasonable determination of the facts.  Accordingly, Respondent requests that this court deny
4 Zimmer's Petition.

5      This Court has reviewed the Petition ("Pet."), Respondent's Answer, the Reply to the
6 Answer, the Supplemental Brief, the Reply to the Supplemental Brief, and all supporting
7 documents.  After a thorough review of the record, the Court concludes Zimmer is not entitled to
8 the relief requested and **RECOMMENDS** that the Petition be **DENIED**.

9 **II.     PROCEDURAL BACKGROUND**

10     On January 15, 1984, Zimmer shot and killed John Cassanelli over a drug debt.  (Pet.
11 Appendix 1 at 1.)  In 1985, the trial court convicted Zimmer of first-degree murder and sentenced
12 him to 16 years to life.  (Pet. at 2.)

13     On June 21, 2007, the Board found Zimmer unsuitable for parole following a parole
14 consideration hearing.  (Pet.  Appendix 1 at 1.) In articulating its reason for denial, the Board
15 identified the circumstances of the 1984 murder, Zimmer's non-violent prior offenses, his
16 extensive history as a drug dealer, his failure to participate in any self-help programming, and a
17 negative psychological report.  (*Id*. at 2.)  The Board determined that Zimmer posed a current
18 threat to public safety because of the cruel and callous nature of the commitment offense coupled
19 with numerous negative pre and post-incarceration factors.  (*Id*. at 1-3.)  Also, the Board denied
20 Zimmer parole for two years because of the commitment offense, Zimmer's need for further self-
21 help programming, and his negative psychological report.  (*Id*. at 2.)

22     Following the Board's denial, Zimmer filed a Petition for Writ of Habeas Corpus with the
23 Superior Court of California on February 13, 2008.  (*Id*. at 1.)  The Superior Court concluded that
24 the Board properly relied on the factual circumstances of the 1984 murder, as well as the
25 numerous, negative pre and post-conviction factors, to satisfy the  "some evidence" standard
26 required to deny parole.  (*Id*.)  Subsequently, on July 15, 2008, the California Court of Appeal,
27 Second District, denied Zimmer's petition without comment. (Pet. Appendix 2 at 1.)  On
28 September 17, 2008, the California Supreme Court denied review of Zimmer's petition.  (Pet.

Appendix 3 at 1.)

On December 8, 2008, having exhausted his state court remedies, Zimmer filed his Petition with the United States District Court, Southern District of California. (Pet. 1 at 1.) Respondent filed an Answer on March 18, 2009. On June 17, 2009, this Court stayed this case pending a decision in *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008) *rehearing en banc granted* 527 F.3d 797 (9th Cir. May 16, 2008). After the Ninth Circuit's ruling in *Hayward*, this Court lifted the stay. Respondent filed a Supplemental Brief and Zimmer filed a Supplemental Traverse. (Doc. Nos. 14 & 15.)

### III. RELEVANT FACTS

This Court gives deference to state court findings of fact and presumes them to be correct. 28 U.S.C. § 2254(e)(1). Regarding the commitment offense, the state court noted:

> The record reflects that on January 15, 1984, the Petitioner and his accomplice went to the home of the victim, John Cassanelli, in order to confront him about a drug debt owed to them. They handcuffed Mr. Cassanelli and forced him and his girlfriend, Deborah Stalder, into their car at gunpoint. As they drove, Mr. Cassanelli repeatedly pled for his life. When he refused to be quiet, the Petitioner's accomplice stated that he was "not suffering enough" and shot him in the leg. After some time, the Petitioner, who was driving the vehicle, pulled over by the side of the road. The Petitioner and his accomplice then forced Mr. Cassanelli out of the car and forced him to disrobe and sit on a nearby rock. Once Mr. Cassanelli complied, the Petitioner's accomplice shot him in the head. The Petitioner and his accomplice then discussed how to dispose of the vehicle and whether they should allow Ms. Stalder to live. Ms. Stalder was able to convince them that she should be allowed to live by promising to sell drugs for them.

(Lodg. 2 at 1-3.)

During Zimmer's 2007 parole hearing, the Board reviewed Zimmer's pre-commitment record. (Pet. Exh. B at 18-19.) The Board discussed Zimmer's prior criminal history including three arrests for car theft; two charges were dismissed, and one was reduced to attempted possession of stolen property. (*Id.*) The car theft charge that was reduced to attempted possession of stolen property resulted from a misunderstanding when Zimmer attempted to purchase a car with cocaine. (*Id.* at 19.) Also, the police had arrested Zimmer for drug possession two months before they arrested him for his present offense. (*Id.* at 19-20.) The prosecutor dismissed the drug charge in furtherance of justice for the present offense. (*Id.*) Nevertheless, the Board concluded that Zimmer's previous record showed an escalating pattern of criminal conduct. (*Id.* at 91.)

1       The Board also reviewed Zimmer's personal history. (*Id*. at 20.) Zimmer grew up in a middle class family and initially attended community college but ended up becoming an auto mechanic apprentice for a Volkswagen dealership. (*Id*. at 21-22.) Upon completion of the apprenticeship, Zimmer and a partner opened their own auto repair business. (*Id*. at 22.) Although the business succeeded, the partnership became strained, and Zimmer sold his portion of the business to his partner. (*Id*. at 23.) Zimmer took the proceeds of the sale and invested in the illicit drug business. (*Id*.) Zimmer maintains that he has cut ties with all his former affiliates in the drug trade. (*Id*. at 26.)

        The Board also reviewed Zimmer's post-conviction history. (*Id*. at 27.) Since incarceration, Zimmer has received three rule violation reports, the most recent report dated October 13, 1994. (*Id*. at 28.) The Board noted that Zimmer has not engaged in any self-help activities since 1997. (*Id*. at 31.) Zimmer claims that he does not participate in "AA" or "NA" because he does not have a drug problem; Zimmer freely admits to selling drugs, but denies consuming drugs or alcohol since he was a youth. (*Id*.) Zimmer also takes issue with "AA" and "NA" because they are Christian based programs. (*Id*.) However, Zimmer is aware that he could utilize other self-help programs besides "AA" and "NA". (*Id*. at 32-33.) The Board informed Zimmer that he could even find his own self-help reading and report this independent programming to the Board. (*Id*. at 31-32.) Also, the Board strongly encouraged Zimmer to engage in substance abuse programming because the Board was concerned about Zimmer re-entering the drug trade if released. (*Id*. at 32.)

        The Board next addressed Zimmer's psychological reports. (*Id*. at 38.) The most recent report stated, "[Zimmer] attempts to portray himself in an overly favorable light. In this evaluation, he appeared to downplay his part in criminal activities and the instant offense. He did admit that he knew his crime partner was going to shoot the victim and did nothing to stop it. His attitude tends to be grandiose. He gives convincing explanations for the criminal behavior and a review of the records suggests a readiness to lie and rework his account of the facts." (*Id*. at 42.) Also, the psychologist found that Zimmer lacks insight into his crime and expresses negative attitudes, but does not participate in self-help programming. (*Id*. at 43-44.) Zimmer took exception to the psychologists use of the "static 99 tool." (*Id*. at 44-45.) Psychologists typically use this tool to

determine reconviction potential for adult males convicted of sexual offenses. (*Id*. at 44.) Although Zimmer was charged with forced oral copulation of a female victim in conjunction with the commitment offense, the jury found him not guilty. (*Id*. at 45.) One Board member characterized this psychological report as "one of the more negative reports I've seen." (*Id*. at 53.)

Regarding mitigating factors, the Board found that Zimmer received very good reviews from his work supervisors and found that Zimmer has reasonable plans for release, including marketable job skills. (*Id*. at 92-93.) However, the Board ultimately concluded that Zimmer continues to be unpredictable and a threat to others because of the negative psychological report and his failure to engage self-help programming despite numerous requests by the Board and encouragement from the psychologist. (*Id*. at 93-94.)

### IV.    SCOPE OF REVIEW

This Petition is governed by Title 28, United States Code, § 2254, as amended by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Redd v. McGrath*, 343 F.3d 1077, 1080 n.4 (9th Cir. 2003) (provisions of AEDPA apply when a state prisoner challenges the constitutionality of a state administrative decision, such as denial of parole). Because Zimmer filed his petition after AEDPA's effective date, the Court may not grant relief unless the state court's adjudication of this claim "resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) *citing Doody v. Schriro*, 596 F.3d 620, 634 (9th Cir. 2010).

California's parole system creates a federally enforceable liberty interest protected by the due process clause.[1] *See Cooke*, 606 F.3d at 1213, *citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979); *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010). A

---

[1] In his Supplemental Brief, Respondent asserts that there is no established federal liberty interest in a parole decision that is supported by some evidence. The Court does not expressly address Respodent's argument because this Court is bound by Ninth law which has foreclosed the issue. *See Hayward*, 603 F.3d at 561-64, *Pearson*, 606 F.3d at 608-09, and *Cooke*, 606 F.3d at 1213.

federal court reviewing a California prisoner's habeas petition must look to California law to determine the scope of the federally enforceable liberty interest. *Cooke*, 606 F.3d at 1213.

Under California law, the primary consideration for the Board or the Governor in determining whether to grant or deny an inmate parole is whether the inmate poses a current threat to public safety. *In re Lawrence*, 44 Cal.4th 1181, 1210-11 (2008). A reviewing court must determine whether "some evidence" supports the Board or Governor's decision that an inmate is a current threat to society. *Cooke*, 606 F.3d at 1214, *citing In re Lawrence*, 44 Cal.4th at 1212-13; *see also Hayward*, 603 F.3d at 562-63. Under such review, although the Board or Governor may consider the commitment offense as one of the factors justifying a finding of current dangerousness, they must not rely on the crime or its circumstances *alone* to justify such a finding. *Cooke*, 606 F.3d at 1214, *citing In re Lawrence*, 44 Cal.4th at 1214. Rather, in order to find current dangerousness based on the commitment offense, the Board or Governor must find something in the prisoner's pre or post-incarceration history, or the prisoner's current mental state or demeanor, indicating that the dangerousness exhibited by the prisoner in the commission of the original crime remains probative of the prisoner's current dangerousness. *See Cooke*, 606 F.3d at 1216, *citing In re Lawrence*, 44 Cal.4th at 1214.

Federal courts reviewing a California prisoner's parole denial, "need only decide whether the California judicial decision approving the [G]overnor's [or Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence'" requirement, or was "based on an unreasonable determination of the facts in light of the evidence." *Hayward*, 603 F.3d at 563.

**V.     DISCUSSION**

    **A.     Claim 1: Reliance on Irrelevant and Unreliable Evidence.**

Zimmer alleges that the Board's decision to deny him parole violates his fourteenth amendment due process rights because the Board relied on irrelevant and unreliable pre and post-conviction evidence, as well as the circumstances of his commitment offense, to determine that he poses a current danger to society and is thus unsuitable for parole. In short, Zimmer alleges that the Board and the state courts unreasonably applied the California "some evidence" standard and unreasonably determined the facts in light of the evidence.

If the state supreme court silently denies a petitioner's appeal with a summary dismissal, the reviewing federal habeas court must look through to the last reasoned state court opinion in making a decision. *See Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). Here, the decision from the Los Angeles Superior Court denying Zimmer's habeas petition is the last reasoned state court decision. (Lodg. 2.)

The Los Angeles Superior Court denied Zimmer's Habeas Petition based on the following facts:

> The Board found the Petitioner unsuitable for parole after a parole consideration hearing held on June 21, 2007. The Petitioner was denied parole for two years. The Board concluded that Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on several factors, including his commitment offense.
>
> The Court finds that there is some evidence to support the Board's findings that the commitment offense involved multiple victims; that it was carried out in a dispassionate and calculated manner; that the victim was abused during the offense; and that the offense demonstrated an exceptionally callous disregard for human suffering. Cal. Code Regs., tit. 15, §2402, subds. (c)(1)(A), (c)(1)(B), (c)(1)(C), and (c)(1)(D). The Petitioner and his accomplice armed themselves and kidnapped the two victims, with the intent of shooting Mr. Cassanelli to death. Mr. Cassanelli, who was not armed, was shot in the head, in an execution-style manner. These actions were planned, deliberate, dispassionate and calculated. Additionally, the victims were abused. The Petitioner and his accomplice intentionally made Mr. Cassanelli and Ms. Stalder fear for their lives for an extended period of time, as they were kidnapped at gunpoint. Further, the Petitioner's accomplice shot Mr. Cassanelli in the leg, in order to make him suffer more. Finally, Mr. Cassanelli was humiliated and forced to disrobe and sit on a rock before he was shot to death. This abuse also demonstrated an exceptionally callous disregard for Mr. Cassanelli's suffering.
>
> The Court also finds that there is some evidence that the motive was very trivial in relation to the offense. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(E). The Petitioner admits that he was motivated solely by the money Mr. Cassanelli owed him and that he knew that he and his accomplice would murder him that day. The drug money Mr. Cassanelli owed the Petitioner was a very trivial motive for abusing, torturing and murdering him.
>
> The Board also considered the Petitioner's non-violent prior offenses, his extensive history as a drug dealer and his failure to participate in any self-help programming for substance abuse. The Board also considered his psychological report, which indicated that Petitioner minimized his role in the offense, lied to make himself sound better, refused to participate in necessary self-help and was a moderate risk of future violence. The Board noted, however, that previous psychological reports were not as negative. While these factors, alone, may not justify a finding of unsuitability, the Board may properly consider them as relevant to a determination of whether the Petitioner is suitable for parole. Cal. Code Regs., tit. 15, §2402(b).

> The Board also considered the Petitioner's post-conviction gains, however, they still concluded that the Petitioner would pose an unreasonable threat to public safety. Penal Code §3041(b). The Court finds that there is some evidence to support this determination because of the nature of the commitment offense as well as his failure to participate in some kind of self-help programming, as the Board has repeatedly recommended.
>
> The Court finds that the Board did not err in denying the Petitioner parole for two years. The Board must articulate reasons that justify postponement, but those reasons need not be completely different from those justifying the denial of parole. See *In re Jackson* (1985) 39 Cal.3d 464, 479. The Board indicated that the Petitioner was denied parole for two years because of his commitment offense, his need for further self-help programming and his negative psychological report. Although the report appears to be in conflict with previous reports, it does constitute some evidence of unsuitability, in that it has not been discredited, or successfully appealed. The reasons cited by the Board were sufficient to justify a two-year denial.

(Lodg. 2 at 1-3.)

When determining whether "some evidence" exists in the record to support the Board's decision, the relevant inquiry is whether "any evidence …could support the conclusion reached by the disciplinary board." *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006), overruled on other grounds; *Hayward*, 603 F.3d at 555 (citing *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985)). The Board must rely on evidence that has a "sufficient indicia of reliability." *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003), overruled on other grounds; *Hayward*, 603 F.3d at 555 (citations omitted). However, the "some evidence" standard does not require the reviewing court to examine the entire record, independently assess witness credibility, or re-weigh the evidence. *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).

This Court concludes that the Superior Court reasonably applied the California "some evidence" requirement when it approved the Board's rejection of Zimmer's parole suitability because the Board based its decision on: (1) Zimmer's escalating criminal history (evidenced by his prior criminal offenses and extensive history as a drug dealer), and (2) his current mental state (evidenced by his negative psychological report and failure to seek rehabilitative programming). (Exh. B at 91.) Based on these factors the Board reasonably concluded that Zimmer's cruel and callous commitment offense remains probative to determining whether he continues to pose a current threat to public safety. Because Zimmer has not complied with the Board's and the psychologist's recommendation for continued programming, he has failed to mitigate the

psychologist's report which concluded that he poses a moderate threat level for violence if released due to his unpredictable nature and psychopathic qualities. (Exh. B at 92-94). Therefore, based on the sufficiently reliable evidence cited by the Board, this Court cannot conclude that the State's judicial approval of Board's determination was an unreasonable application of the "some evidence" requirement. *See Hayward*, 603 F.3d at 563.

Nor can this Court conclude that state judicial decision was "based on an unreasonable determination of the facts in light of the evidence." *Id.* Zimmer has failed to prove by clear and convincing evidence that the Board relied on irrelevant and unreliable evidence to conclude that he poses a current threat to public safety. *See* § 2254(e)(1). Zimmer's admissions at his Parole Board Hearing foreclose his initial contention that his prior criminal history has no bearing on his current suitability for parole. Indeed, Zimmer admitted to the following facts: (1) he sold a legitimate business in order to become a drug dealer, (2) initially he bought and sold pounds of marijuana, but later on he began trafficking pounds of cocaine, (3) he dealt drugs for seven years, (4) his commitment offense involved the torture and execution-style murder of a man over a drug debt, and (5) he and his accomplice considered, but ultimately decided against, murdering a female victim also abducted at the time of the murder, because they could continue to use her to sell drugs. (Exh. B at 48-51, 66-67, 92.) Consequently, the Board expressed concern that, despite legitimate post-incarceration job prospects, Zimmer might be inclined to re-enter the lucrative drug trade. (*Id.* at 32.) This Court concludes that Superior Court did not base its decision on "an unreasonable determination of the facts in light of the evidence" because Zimmer himself provided the relevant criminal history, and the Board reasonably inferred that Zimmer's criminal history, up to and including the commitment offense, is relevant to a determination of his suitability for parole. *See Hayward*, 603 F.3d at 563.

Aside from claiming that his prior criminal history has no bearing on his current suitability for parole, Zimmer has failed to specify what other evidence was irrelevant and unreliable, and why. The Superior Court noted that although the negative psychological "report appears to be in conflict with previous reports, it does constitute some evidence of unsuitability, in that it has not been discredited, or successfully appealed." (Pet. Appendix 1 at 2-3.) Consequently, absent clear

1 and convincing evidence discrediting the negative psychological report, this Court concludes that
2 the Superior Court reasonably determined that the report is probative of Zimmer's suitability for
3 parole.

4 Moreover, Zimmer has provided this Court with no basis to overlook or re-weigh the
5 evidence presented to the Board and reviewed by the Superior Court. *See Hill*, 472 U.S. at 455
6 (1985).[2] Therefore, pursuant to section 2254(e)(1), this Court presumes the factual issues
7 determined by the Superior Court to be correct, and this Court concludes that the Superior Court
8 reasonably applied the "some evidence" standard. Accordingly, Zimmer's first ground for habeas
9 relief lacks merit.

### B. Claim 2: Failure to Set a Release Date.

11 Zimmer's second ground for habeas relief alleges that the Board's failure to set a release
12 date violated his due process rights. The California Penal Code requires that the Board set a
13 release date "unless it determines that the gravity of current convicted offense or offenses, or the
14 timing and gravity of current or past convicted offense or offenses, is such that consideration of the
15 public safety requires a more lengthy period of incarceration." Cal. Pen. Code § 3041(b).

16 Where the Board finds a prisoner suitable for parole, the Board "shall normally" set a
17 future parole release date. *See In re Dannenberg*, 34 Cal. 4th 1061, 1079-80 (2005); Cal. Pen.
18 Code § 3041(a). The Board must set a release date unless it determines that "the gravity of the
19 current convicted offense or offenses, or the timing and gravity of current or past convicted offense
20 or offenses, is such that consideration of the public safety requires a more lengthy period of
21 incarceration for this individual, and that a parole date, therefore, *cannot be fixed* at this meeting."
22 Cal. Pen. Code § 3041(b) (Italics added.) However, in the case of a convicted murderer serving an
23 indeterminate life sentence, the Board must first determine if the prisoner is suitable for parole,
24 and then, if the prisoner is found suitable, the Board shall set a release date. *See In re*

---

[2] The "some evidence" standard articulated in *Hill* is applicable to the parole context. *See e.g.*, *Jancseky v. Or. Bd of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).

1  *Dannenberg*, 34 Cal. 4th at 1079-80.

2  Here, the Board found Zimmer unsuitable for parole, in part because of the gravity of the commitment offense. Thus, absent the predicate finding of suitability, the Board did not set a parole release date because California law does not require the Board to set a release date for a convicted murderer serving an indeterminate life sentence and currently deemed a present threat to public safety. *See In re Dannenberg*, 34 Cal. 4th at 1079-80, 1091. Accordingly, Zimmer's second ground for habeas relief lacks merit.

### C. Claim 3: Alleged Failure to Participate In Rehabilitation Activities.

Finally, Zimmer alleges that the Board violated his due process rights because its parole decision relied, in part, on his failure to avail himself fully of rehabilitative programming. Zimmer's allegation fails because the Board may consider the inmate's current demeanor and mental state when determining if there is "some evidence" of current dangerousness. *Cooke*, 606 F.3d at 1214; *Hayward*, 603 F.3d at 562; *In re Lawrence*, 44 Cal.4th at 1221. Thus, a Board may properly consider an inmate's failure to avail himself of rehabilitative programming, especially where that inmate has received a negative psychological report and has a history of criminal activity. (Exh. B at 31, 91.) The key inquiry here is not whether Zimmer did or did not participate in the programming, but rather how does his participation or non-participation factor into an overall assessment of his current dangerousness. *See Cooke*, 606 F.3d at 1215. To this end, the Board cited the following passage from the 2007 psychologist report: "[Zimmer] poses a moderate likelihood to become involved in future violence if released. Additionally, he presents as defensive with an antisocial attitude with tendency toward the grandiose. He still exhibits psychopathic qualities." (Exb. B at 92-93.)

The Court concludes that the Board reasonably connected Zimmer's cruel and callous commitment offense, his pre-incarceration criminal history, his most recent (and negative) psychological report, and his failure to participate in programming, to demonstrate that he poses a current threat to public safety and is in need of further rehabilitative programming. Additionally, because Zimmer has not cited, nor has this Court found, any California or Federal authority to support his third ground for relief, this Court concludes his argument lacks merit.

## VI. CONCLUSION AND RECOMMENDATION

Because the Board identified "some evidence" to support their denial of parole, and because the Board reasonably concluded that Zimmer poses a current threat to public safety based on pre and post-incarceration evidence coupled with the circumstances of the commitment offense, the state court reasonably applied the "some evidence" standard, and reasonably determined the facts in light of the evidence. *See* 28 U.S.C. § 2254(d); *See Hayward*, 603 F.3d at 562-63. The Court **RECOMMENDS** that Zimmer's petition be **DENIED**.

The Court submits this Report and Recommendation to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **October 22, 2010** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **November 2, 2010.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED: September 30, 2010

_____
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court